## Chicago & Alton Railroad Company v. Frank O'Brien.

. QUESTIONS OF FACT—*Cause and Effect.*—Where a matter in controversy involving questions of cause and effect can not be calculated or measured with such certainty as to amount to a demonstration, its solution by a jury must be accepted as correct.

2. FELLOW-SERVANTS—*A Question of Fact.*—It is now well settled that whether the relation of fellow-servants exists between workmen, is a question of fact for the jury, and their solution of it must be sustained unless it is palpably against the weight of the evidence.

3. FELLOW-SERVANTS—*Who Are Not—Fence Gangs and Section Gangs.*—Employes of a railroad company constituting the "section gang," are not fellow-servants with other employes constituting the "fence gang," although the foreman of the section gang temporarily instructed and advised the foreman of the fence gang where work was to be done on or near his section, and directed and showed him how to perform the work.

**Memorandum.**—Action for personal injuries. In the Circuit Court of McLean County; the Hon. THOMAS F. TIPTON, Judge, presiding. Declaration in case; plea, not guilty; trial by jury; verdict for plaintiff, $3,500; judgment; appeal by defendant. Heard in this court at the November term, 1893, and affirmed. Opinion filed February 12, 1894.

*Fellow-servants—Plaintiff's instructions:*

3. The court instructs the jury, that to constitute the servants of the defendant in charge of the fence gang hand-car, fellow-servants with the plaintiff, so as to exempt the defendant railroad company from liability on account of an injury sustained by the plaintiff from the negligent acts of the servants of the defendant in control of the fence gang hand-car (provided you believe from the evidence, plaintiff was injured by the negligence of such servants), such servants should be actually co-operating at the time of the injury in the particular business in hand, or their usual duties should bring them into habitual consociation with each other, so that they might exercise an influence upon each other promotive of proper caution for their personal safety.

4. The court instructs you that to constitute servants of the same master, fellow-servants within the rule *respondeat superior*, it is not enough that they are engaged in doing parts of the same work, or in the promotion of the same enterprise carried on by the master, not requiring co-operation or bringing them together, or in such relations as that they may have an influence upon each other, but it is essential that at the time it is claimed such relations exist they shall be directly co-operating with each other in the particular business in hand, or that their usual duties shall bring them into habitual consociation, so that they may

exercise an influence upon each other promotive of proper caution for their personal safety. And the jury are to determine whether plaintiff and the members of the fence gang, spoken of by the witnesses, were such servants or not, from all the evidence in the case, under the rule of law above stated.

The opinion states the case.

Appellant's Brief, Wm. Brown and Williams & Capen, Attorneys.

Appellee's hurt, if caused by the negligence of any of the employes upon either car, was the result of negligence of fellow-servants, for which there can be no recovery against appellant. O. & M. R. R. Co. v. Robb, 36 Ill. App. 627; Valtez v. O. & M. R. R. Co., 85 Ill. 500; C. & A. R. R. Co. v. Murphy, 53 Ill. 336; Abend v. T. H. & I. R. R. Co., 111 Ill. 202; C. & E. I. R. R. Co. v. Geary, 110 Ill. 383.

The question of who are and who are not fellow-servants, when the facts are undisputed or established, in such a case as the one at bar, is a matter of law.

See cases above cited and Starne v. Schlothane, 21 Ill. App. 97.

In going to and returning from work, the relationship of fellow-servants is created without regard to whether or not such relationship exists when in the performance of their usual duties. Moss v. Johnson, 22 Ill. 633; Relyea v. K. C., F. S. & G. R. R. Co. (Mo.), 20 S. W. Rep. 480; Justice v. Pa. Co. (Pa.), 30 N. E. Rep. 303; Gilshannon v. I. C. R. R. Co., 10 Cush. 228; Russell v. H. R. R. R. Co., 17 N. Y. 134; T. W. & W. Ry. Co. v. Durkin, 76 Ill. 395; Ewald v. C. & N. W. R. R. Co., 70 Wis. 420; Gilman v. E. R. R. Co., 10 Allen, 233; Hutchinson v. Ry. Co., 5 Exch. 343.

All employes in the same department of service are fellow-servants. N. O. R. M. Co. v. Johnson, 114 Ill. 57; B. & O. R. R. Co. v. Baugh (Sup. Ct. U. S.), 54 Am. and Eng. Ry. Cas. 328 (349), 149 U. S. 369; Randall v. B. & O. R. R. Co., 109 U. S. 478.

Without strict regard to the question of a fellow-service, the negligence of a servant whereby another servant in the

same department of service is injured, is one of the ordinary perils the latter assumes.   W., St. L. & P. R. R. Co. v. Conkling, 15 Ill. App. 157.

Appellee's Brief, J. J. Morrissey, Attorney.

Whether or not appellee was a fellow-servant of the members of the fence gang was rightly submitted by the court to the jury as a question of fact.   Hence, it would have been error to have given an instruction to find for appellant.   C., B. & Q. R. R. Co. v. Fitzgerald, 40 Ill. App. 476; C. & N. W. Ry. Co. v. Snyder, 128 Ill. 655; Penn. Co. v. Versten, 41 Ill. App. 345; P., D. & E. Ry. Co. v. Rice, 144 Ill. 227.

The foreman and the members of the fence gang, whose negligence caused appellee's injury, were not fellow-servants of appellee.   L. E. & W. R. R. Co. v. Middleton, 142 Ill. 550; L. E. & St. L. C. R. R. Co. v. Hawthorne, 45 Ill. App. 635; C., St. L. & P. R. R. v. Gross, 35 Ill. App. 178; 133 Ill. 37; Rolling Mill Co. v. Johnson, 114 Ill. 57; Railway Co. v. Moranda, 108 Ill. 576; Railroad Co. v. Kelly, 127 Ill. 637; Railroad Co. v. Morganstern, 106 Ill. 216; Railroad Co. v. May, 108 Ill. 288; Railroad Co. v. Blank, 24 Ill. App. 438; Railway Co. v. Hawk, 121 Ill. 259; Railroad Co. v. Hoyt, 122 Ill. 370; Railroad Co. v. Ross, 112 U. S. 377; Schroeder v. C. & A. R. R. Co., 108 Mo. 322; Dayharsh v. H. & St. J. R. R. Co., 15 S. W. Rep. 554.

The cause of appellee's injury was not one of the usual and ordinary risks assumed by him as incident to his employment.   Northern Pac. R. Co. v. Charles, 2 U. S. C. C. A. 380; 51 Fed. Rep. 562; Railroad Co. v. Gross, 35 Ill. App. 178; Railroad Co. v. Fitzgerald, 40 Ill. App. 476; Schroeder v. C. & A. R. R. Co., 108 Mo. 322.

Mr. Presiding Justice Boggs delivered the opinion of the Court.

The action below was case against the appellant company by the appellee to recover damages because of injuries inflicted upon him by a fall from a hand-car, caused, as the

declaration alleged, by the negligence of certain servants of the appellant company. A trial before the court and a jury resulted in a verdict and judgment in the sum of $3,500 against the appellant, to reverse which this appeal was perfected.

The appellee and others, all employes of the appellant, composing a force called a "section gang" under charge of James Sheehan, foreman, were, while in the discharge of their duty, returning in a hand-car from the place of their work on the track of appellant's road to the yards of the company, in Bloomington. In their rear upon the same track they were followed by another hand-car in which a force of appellant's employes called the "fence gang" were returning from the work of the day to the same yards of the company. The declaration charged, and the recovery below was upon the theory that the "fence gang" negligently and recklessly drove or ran its hand-car into and against the rear end of the car upon which the appellee was riding and derailed it, causing him to be thrown suddenly and violently to and upon the ground and seriously injured. That the car of the fence gang ran into and struck the car of the section men was not denied, but appellant's insistance is, that it appears from the evidence that the section handcar left or jumped the track because of the negligent manner in which the appellee and others upon it were controlling and operating it or from some other cause, and that the car in the rear ran into and collided with the one in front because it had become derailed and suddenly stopped, while the contention of the appellee is that the car upon which he was riding was derailed by the force of the collision.

Both cars were derailed and the derailment and the collision occurred so nearly at the same instant that which preceded in point of time was the subject of much conflicting testimony. This question seems to have been distinctly presented to the jury by the court as a question of fact. Instructions No. 1, 2 and 3 given in behalf of the appellant company in effect directed the jury to find for the company, if they believed from the evidence that the appellee

was thrown or caused to fall from the car before the cars collided, or if he was not caused to fall by the collision.

Appellant's counsel urge that the appellee's theory upon this contention is refuted by the conceded and well established fact that he fell or was thrown forward in the direction in which the cars were moving and fell to the ground in front of the car upon which he was riding. The argument in this respect is that as both cars were moving in the same direction, the effect if the rear car had run into and against the one in front, would have been to impart increased forward motion to the car in front and to cause the men standing upon it to fall backward, not forward.

It can not, we suppose, be doubted but that the first effect of such a blow to the rear of the front car would be to carry the feet of those riding upon it from under them so that they would topple backward, and if no other force intervened, fall backward if they fell at all; but if the force of the blow from the rear car was sufficient to derail the one in front and thus instantly stop its motion, the appellee would have retained the momentum imparted to him from the car upon which he was riding, whereby the tendency to topple or fall backward might not only have been entirely overcome, but he be thrown violently forward to the ground in front of the derailed car. The power of these two opposing forces operating so nearly at the same instant can not be calculated or measured with such certainty as to amount to a demonstration. So it seems to us the question remained one of fact, upon which the evidence was so hopelessly conflicting that the judgment of the jury must be accepted as the correct solution. It is next urged that the employes upon the two cars were fellow-servants. If a different rule may be gathered from early adjudged cases cited by the counsel for the appellant company it seems now well settled that whether that relation exists between workmen is a question of fact. C. & N. W. Ry. Co. v. Moranda, Admx., 108 Ill. 576; Lake Erie & W. R. R. Co. v. Middleton, 142 Ill. 550; L. E. & St. L. R. R. Co. v. Hawlton (Ill.), 35 North Eastern Reporter 534. In the case at bar the court in

the instruction to the jury correctly defined the relation of fellow-servants. It therefore only remains to be determined whether the finding upon that issue was palpably against the weight of the evidence. It appears from the evidence that the duty of the force of men known as the fence gang was to build and keep in repair the fences of the company at any and all points along its line from Odell to Roodhouse, a distance of 175 miles; that of the "section gang" was to repair and maintain the track and road bed within the limits of a certain section of the road four and one-half miles in length, and in addition to repair breaches in the fences should any occur within the limits of the section in the absence of the fence gang. The fence gang did no work about the road bed or track; such comprised the general and usual duties of the two forces of workmen; each "gang" had a separate hand-car and were in charge of a separate foreman or "boss."

It is apparent that these bodies of workmen were in no wise associated in the discharge of their usual and general duties, nor did the performance of such duties bring them into habitual consociation, or require them to directly co-operate in the business or work of the company, so that the individual members of one force could or should exercise an influence upon those of the other, promotive of proper caution, so as to create the relation of fellow-servants. Chicago R. R. Co. v. Moranda, 108 Ill. 576; L. E. & St. L. R. R. Co. v. Hawthorn, *supra.*

It was proven that Costello, the foreman of the fence gang, was unacquainted with or not experienced in the duties of his position, and that the road master had for that reason directed Sheehan, the foreman of the section gang, to render him assistance and advice, and had ordered Costello to apply for and be governed by the instructions of Sheehan. In obedience to such directions Sheehan showed Costello where work was to be done on or near his section, and directed and showed him how to perform the work, helped him distribute posts, and strung wire for the fence upon them, and on the day that the appellee received his in-

juries, Costello was for a portion of the day with the fence gang, instructing and assisting them in the work upon the fences. It did not, however, appear that the " section men " were at any time employed in aiding or assisting in this work upon the fences.

Sheehan, upon the contrary, kept the section men at their work upon the road bed or track and would leave them temporarily and go to the fence gang, and aid and assist them. These special duties required of and performed by Sheehan, it is insisted, operated to so consolidate the two gangs as to create among them the relation of fellow-servants.

We think not. The section foreman acted temporarily in two capacities, but each of the separate forces or gangs of men continued to be engaged in their usual employment, and neither co-operated with the other in the furtherance of the particular business of the general master nor had either connection or concern with the labors or duties of the other. The "fence gang" had been engaged at their work near Bloomington but eight or ten days before the appellee was hurt; while so engaged they kept their hand-car in the yards of the company where the car of the section men was kept, but the hand-cars were kept in different parts of the yard, more than one-fourth of a mile apart.

As the workmen in each force began work at the same hour in the morning and quit at the same time in the evening, it not infrequently occurred that they departed upon their hand-cars in the morning and returned at the close of the day at about the same hour, and at such times were thrown to some extent together or near together. This, of course, only happened while the fence gang was at work within the limits of the section or at such short distance beyond such limits that they continued to board and lodge at Bloomington. It is urged that the workmen composing the two gangs ought while so going to or returning from work be regarded as fellow-servants. While thus engaged they were occasionally brought into close proximity but they were not co-operating with each other.

Each force was intent upon a separate purpose; their prox-

imity was but casual, in a sense accidental, and a majority of the court are of opinion the risk of injury arising therefrom was not one of the natural risks and perils incident to the performance of the duties of a section hand which it ought to be supposed the appellee had, by his contract to labor in that capacity, taken upon himself as between him and his master. Whether such risk was incidental to his employment, it has been said, is the true test in such cases. Roberts & Wallace on Employes, p. 183. The instructions asked by the appellant company which it is complained were refused, were framed upon the theory that the question whether the relation of fellow-servants existed is one of law. As we have seen, the contrary rule obtains in this State.

It is urged that the evidence fails to show that the injuries sustained by the appellee were so serious or permanent in character as to justify the award of damages in the amount fixed by the jury.

The physical condition of the appellee at the time of the trial was such as to warrant the action of the jury but there is evidence in the record tending strongly to support the position that to a greater or less extent his afflictions existed before he received the fall from the hand-car and were in no wise attributable thereto.

A thorough examination of the evidence leaves us by no means free of doubt upon this phase of the case but it can not be denied that there is also in the record sufficient evidence to support the appellee's theory as to his injuries, and it seems the jury accepted it as the better proof.

The question is one purely of the facts, and as it can not be said that the jury were palpably wrong, it is beyond our power to interfere.

The judgment must be and is affirmed.